Good morning, your honors. May it please the court. I'm Catherine Lewis and I'm appearing on behalf of the petitioner, Mr. Kumar. The central issue in this case is the IJ's adverse credibility finding. Her finding rests on three main points, none of which are supported by substantial evidence. Her first conclusion is that Mr. Kumar, quote, does not speak like a political activist who has lectured publicly on human rights problems, end quote, and that's at AR 32. Here, the judge's comment is clearly speculative about what a human rights activist should sound like. There's simply no requirement that an asylum applicant be an articulate or persuasive activist. Speculation like this cannot form the basis of an adverse credibility finding. This finding is further undermined by the interpretation issues that were present in Mr. Kumar's hearing. The IJ agreed to switch interpreters in this case towards the end of the proceedings, yet redid none of the prior testimony. Moreover, the record itself contains evidence of the errors in the interpretation. For example, at AR 79, the interpreter adds the word machine shop for tailoring, and then at 80 to 81, translates human rights as, quote, Homer writing. She also, the interpreter admits that she was, quote, having problems with translation, and that's at page 84. The interpreter's own English is at times incomprehensible. Thus, the IJ is on notice that there are interpretation issues in this case, and she tries to cure her decision from those problems by saying that Mr. Kumar's difficulties in making himself understood, quote, continued after a new interpreter came in, end quote, and that's at page 30 of her decision. But that is simply not supported by the record. I mean, the problem for this Court is that there's absolutely no indication in the record when the substitution of interpreter occurred. There's nothing that was put on the record by the IJ, and the new interpreter was never sworn in. It's clear that it's close to the end of the proceedings. Just from reading the record, there's an objection to her interpretation, and the first interpreter was a female. Kagan. Assuming that's true, let me ask another question. Regarding Mr. Kumar's three affidavits the government cites to SIDU for their proposition that corroborating evidence may be required when an applicant's credibility is questioned, does the lack of corroboration when it comes to threats from the police support the IJ's adverse credibility determinations in this case? The issue of the lack of corroboration is actually not before the Court because the IJ didn't rely on that in making her determination. She relies on the omissions and the affidavits to find that Mr. Kumar, quote, embellished his claim, but that's not supported by the record. And so the fact that she wasn't relying on lack of corroboration means that this Court can't review that issue that's set forth in SIDU. But about the reliance, then, on the police issue of the affidavits, that there's the lack of mention of the police. That was one of the grounds for discounting his credibility, wasn't it? The judge does cite to that, but I note the judge's expressed language on this point. She says at page 32 of her decision that significant to her adverse credibility finding was, quote, the collective omission by three affiants, end quote, who allegedly failed to mention Mr. Kumar was harmed by the police. But here the IJ is misstating the record. I mean, it's undisputed by the government and clear on the face of the record that one of the affiants, in fact, mentions the police in his declaration. But you said that issue wasn't before the IJ. The issue of whether or not corroboration was required is not before the IJ, before this Court. The Court didn't turn to the – didn't rely on the fact that Mr. Kumar didn't submit sufficient corroborating evidence. She relied on omissions in the declarations to find that Mr. Kumar was embellishing his claim by adding the claim of police. But the record – Because there was no corroboration. But there was corroboration, because one of the affidavits includes mention of the police, and the judge just misreads the record. So it's not – The issue was there. She just didn't mention it. She didn't articulate that point. Right. And I would just note, because the IJ is explicitly in this case relying on the collective omission of three affiants, her findings on this point must fail. We don't know what the judge would have done had she properly read the record that one of the affiants mentioned the police. It's clear she was relying on all three of the affiants not mentioning the police. And so her point here cannot be supported by substantial evidence. And the mere omission in an affidavit of a point isn't the basis of an adverse credibility finding. And in terms of her reliance on these affidavits to find that Mr. Kumar was embellishing his claim, that's just not borne out by the record. He's been consistent throughout that he was targeted by both the police and the militants. His asylum application was filed in March of 2003, and he mentions numerous problems with both the police and the militants. He doesn't submit these affidavits until March of 2005, nearly two years later. So he's never been inconsistent about the targeting by the police. And he's one of these affidavits includes the fact that the police were also coming after him. So the I.J.'s point about these affidavits simply can't be used as an ad to support an adverse credibility finding. What about another, what I think is a third prong that the I.J. relied on having to do with this misleading statement supposedly with respect to why traveling to Canada, what is the response to that? The judge relies on Mr. Kumar's knowledge about the whereabouts of the Pope while he was in Canada, but it has absolutely nothing to do with his asylum claim. It's simply not relevant to the heart of his claim. And this is a pre-real ID act where the any kind of adverse credibility finding must be go to the heart of the asylum claim. And here, Mr. Kumar testified that he didn't remember what he told the Border Patrol agents, and the I.J. just speculates that he was really going to Canada to see the Pope. And so first, this just can't be used by the I.J., because it has absolutely nothing to do with Mr. Kumar's fears of returning to India. And I would just note that the I.J., in terms of the withholding of removal denial, she erred in failing to independently assess that part of the case. She allowed her conclusion that Mr. Kumar was not entitled to the discretionary relief of asylum to preclude consideration of his withholding claim. But unlike asylum, withholding of removal is not discretionary. And of particular note, here the I.J. says, quote, background documents raise the possibility of future harm, end quote, to Mr. Kumar, and that's at page 34 of her decision. So she acknowledges that there's a potential future harm, yet never does an independent assessment of that withholding of removal claim in plain error, and that decision must also be reversed. And I would like to reserve my remaining time. Thank you. Good morning. Good morning. May it please the Court. My name is Paul Stone. I represent the Respondent Attorney General in this case. There were three primary bases for the immigration judge finding that Kumar lacked credibility, and only one of them needs to be supported by substantial evidence for this Court to deny the petition for review. First was his inability to articulate basic facts about his purported human rights organization and its activities. The second one.  That's correct, Your Honor. Just because we're in the shifting sands sometimes on these cases as to pre- and post-real ID. You're right, Your Honor. This is a pre-real ID Act case, and that's why I mentioned the pre-real ID case law that says that only one of the instances needs to be supported by substantial evidence. And the second of the bases was that two of the declarations failing to mention Kumar's primary claim for asylum, which is his fear of police, and, yes, the immigration judge did miss one of them. You know, it's difficult for me to hear you. I'm sorry, Your Honor. Can you hear me now? Yes. Okay. The third basis was Kumar's inconsistent statements regarding why he traveled to Canada. I'll start with that one. That issue does go to the heart of his claim because one of the main questions in this case was why did you leave the country? Did you flee persecution or did you not flee persecution? And what the immigration judge did, she did two things. She saw this inconsistency and saw that it undermined his credibility, but she also did garden variety fact-finding, which is she looked at the evidence that he had told the immigration officers that arrested him that he had been to Canada for World Youth Day and to see the Pope, that the Pope had in fact been in Canada, that World Youth Day had in fact taken place while he was there, that he had been there for two months. And then when he testified, he said, I don't remember what I said to the police. And he denied even knowing the Pope had been there, the immigration judge. How does that square? You know, this has always been a little bit of a mystery to me where you can look at credibility, but then we have this case law that says you can lie to the immigration, you know, why you left and what you said to the immigration people in order to get yourself in actually can't be a basis for credibility with respect to what happened and what you were doing in the country itself. So how do we reconcile that with your argument? Well, your Honor, the immigration judge actually recognized that, and correctly so, because oftentimes aliens who are fleeing persecution will not tell the truth about why they're leaving, and there's very good reasons for that. For example, if they tell the truth when they're leaving their own country, their persecutors may in fact persecute them when they're trying to go out, when they're trying to come in here. They may not have legal basis to get in here. They may need to say whatever they can to get into the borders. But the reason I talk about the immigration judge weighing the evidence, as any finer fact does, is the immigration judge looked at this situation and said, this is unusual because he appeared to actually tell the truth coming in, and now he's not. And weighing all the evidence, the immigration judge concluded he did in fact go to Canada for World Youth Day and to see the Pope. I'm surprised that you're relying on this as your first basis. It seems like that's the very weakest claim from your standpoint as to why that was incredible. Your Honor, it wasn't strategic. It's just because that was the last subject discussed, and I just sort of, I jumped into it. But I'll go on to the other two because you're right. There are stronger bases there. For example, his inability to articulate basic facts about his human rights organization and its activities. That's become, throughout this case, there's become a caricature of that, that the immigration judge just said, well, he doesn't sound like a human rights activist. The decision actually says more about that. But isn't that kind of statement, he doesn't speak like a political activist, isn't this precisely the kind of conjecture and speculation proscribed by this Gordon Shaw versus INS? Well, Your Honor, that's why I was saying that it's become a bit of a caricature. That's not entirely what the immigration judge said. The immigration judge talked about him not being able to articulate what his organization did, what his role was, what the actual name of it was. He actually never successfully gave the name of the organization, for example. Now, he now claims that there was translation problems, but if you actually look at the transcript, the translator did her best to help him. He tried to say, he said something she couldn't understand. She said, I think he's speaking the English name. And then she said, it sounds like he might be saying human rights, but I don't want to assume that. And then she said what he was saying in English, it sounds like Homer right, or something like that. And he never actually, the interesting thing about that is his counsel spoke Punjabi, and his counsel was happy to jump in and correct the interpreter any time she thought there was a problem. She didn't jump in and correct the interpreter on that. And more importantly, he didn't actually say the name, which is the Jammu and Kashmir Human Rights Organization. But these are her very words. Respondent who claims to be a person of limited education does not speak like a political activist who has lectured publicly on human rights problems. That's right, Your Honor. But that's part of that whole paragraph there where she talks about another problem that arose early in the Respondent's testimony when he had trouble pronouncing the name of the organization. Excuse me, you're speaking so fast. I'm sorry. I'm losing the meaning of your words. It's not just that sentence. You have to look at that paragraph is where she discusses the whole basis for this determination. And that's where she speaks of the other problems such as when he had trouble pronouncing the English language name of his organization. One would think anyone, whether they give speeches or not, whether they're articulate or not, would know the name of their organization. He also had a hard time giving a description in his own language of the organization and its work. And these are things that anyone, not just an articulate political activist who gives speeches would be able to do. And the immigration judge goes on to say, yes, you know, if he is a political speaking is not the exclusive domain of highly educated people, and she goes on to discuss that he doesn't speak like a human rights activist, but he also could not describe the basic concepts of human rights advocacy. And his inability was more consistent with lack of experience than lack of education. So there's much more than just saying he doesn't speak like a political activist. She's just the same. But it reminds me of some of the cases we've had where the IJ, you know, the person testifies and the IJ says, well, it doesn't really, she doesn't really seem and look like the kind of Christian person that she claims to be. And we've said, you know, that kind of speculation of what we have in our head, what a nice Christian woman would look like or what a human rights activist would look like, which by the way, today is the anniversary of the International Human Rights, but that's an aside. So I'm just a little, it does concern me that the immigration judge is making this rather blanket characterization based on what one might imagine. You know, he's no Martin Luther King for sure. And I know she's saying you don't have to be, you know, that fancy and that looks to me like speculation. And how do we overcome that? Your Honor, in this case, you're right. I'm aware of those cases that you're speaking of. And that's often because the immigration judge doesn't point to anything in the record and just simply says this person doesn't seem that way. And that is a huge problem. But here the immigration judge does talk about the record, you know, early on in reciting the facts and then summarizing in the actual holding here the problems that led her to conclude this. For example, as I already said, never successfully gave the name of his organization. That's in the record at 1882. Couldn't articulate the description of the organization and its work. That's at pages 112 through 114, which also included he didn't know where the organization's headquarters is at 115. He didn't know the leader of the organization at 129. He didn't know the organization's structure at 132. So there's actually a basis in the record for the immigration judge to come to this conclusion. So it's not like there's other cases where there's just rank speculation. In the little time I have left, I should mention the last issue, which is two of the And the government hasn't denied that the immigration judge missed one of the declarations that didn't mention it. But the other two are still extremely significant. One of them was his brother. And he stated that his brother lived near him, which is where the police raided his house twice and potentially a third time. He also said that his family paid his bride to get him out of the prison. His encounter with the police is his primary basis for asylum. The police were the ones that actually arrested him and allegedly persecuted him. His neighbor was the other person who gave the declaration, who again lived next to him, which is the place where the police came three times. The immigration judge simply found that it was incredible that these people would provide declarations in support of his claim for asylum and then leave out his strongest claim, his primary claim, and the claim that they would most likely be aware of. And I see I'm out of time, Your Honor. So I'll try to keep you on schedule and end here. I would just point out to the Court in terms of the speculation by the I.J. She also makes a comment about that, quote, history is full of uneducated but articulate activists and advocates for a cause, end quote. Again, showing that she's expecting and speculating that somebody even uneducated should be articulate. There's just no requirement. I think she was a little more specific before that. And I think counsel makes a good point that he doesn't know what the headquarters is, can't pronounce the name, can't even tell you what the basic precepts are. You know, who's the leader. He actually is pretty deficient in anything about the so-called basis on which he's hinging his claim. So how do you respond to that? Because those are fairly concrete, specific things without imposing a, you know, a high gloss on what a political rights activist might be. He explains, well, I think in terms of not knowing the details of the structure of the organization, that's something that an activist or somebody who's uneducated might not actually know. But did he know? You know, basically, he really became involved because his neighbor was killed and he held this opinion that my neighbor was killed and I object to these tactics. And that, at its heart, is a political opinion. And he didn't think the police were taking the necessary action. And that, in and of itself, and he expresses that. And that is a political opinion. And that's essentially what a human rights organization is. And so that he's not sophisticated in his explanations shouldn't be faulted. And I think also here is where the interpreter issues come in, because the IJ notes that he had trouble pronouncing the name of the organization, had a hard time giving a description of the organization. But these are based on his manner of speech. And that's precisely what an interpreter is important for. So as a part of this record, it's a little bit unclear how detailed he was in his speech. And I think my time is up. Thank you. Thank you. The case of Ashok Kumar v. Holder is now submitted. I'd like to thank you both for your argument this morning.
judges: Hug, Nelson D. W., McKeown